Mr. Weinberg, you're reserving three. I am. Good morning, Jonathan Weinberg for Appellant Commission, the term lofty batting is indefinite, is definite, should be overturned. And we have three reasons why that is this morning. The first one procedural, the second two are the substantive remarks. So I'd like to start with the procedural argument first, and that's kind of a simple one. It's just that the Commission's reasoning here was insufficient to provide a reasonable basis to affirm the decision. The Commission adopted the bulk and resilience definition. This was the definition at columns 7, 9, 1 to 3, that a fibrous material that some resilience is lofty. We've raised an indefiniteness challenge to the ALJ and the Commission, arguing among other things, that the definition is itself indefinite, specifically because the term some resilience is a term of degree with no objective value. You raised the legal theory of indefiniteness in your petition for review. But Aspen argues you've weighed several of the specific indefiniteness arguments you advance now. In the blue brief at 19, you argue, quote, that the ALJ's claim construction is wholly incompatible with the single sentence it offered in rejecting Allison's indefiniteness argument. Where in your petition for review before the ITC did you raise that exact argument? There are two merits issues that are issued in this appeal. The argument to the Commission had both, but either one of them is sufficient. The one I'm talking about here, the some resilience issue, that the term some bulk and some resilience is indefinite, was raised... So what you're going to tell me is, on all these ones that I ask you about, you're going to say, that doesn't matter. No, no. I'm happy to cite it. It's in our petition. We raised it at 121.87. That's the how to measure loftiness. Now, the some resilience issue specifically, that was raised in the petition at 121.87 to 92. It was very... Hang on for a second. Just hang on. Let us catch up with you. Yeah, let's start... So you said 121.87? Let's start with 127. I mean, 121.87. That's the petition to the Commission, and that raises the second indefiniteness argument that some resilience is indefinite. Okay. And what... Is there a particular part on this page that you want to direct us to for support for your argument? Sure. So we have on 121.89, the term some resilience is indefinite. Nor does the phrase some resilience provide reasonable certainty to a person of skill in the art. The intrinsic record fails to specify how to demarcate the line between fibrous material that has some resilience and one that does not. Resilience is not reasonably bounded, and likewise is indefinite. So that's in the petition to the committee, to the Commission. In the blue brief at 24 to 26, you argue that the 359 patent offers at least two independent ways that the ALJ failed to explain why it selected one disclosed method and ignored another. Where in your petition for review did you raise that? That's in two places. The petition for review, it's at APPX 121.87, just raising a larger challenge to the definition to begin with. Now, I know that's not quite as clear as how it is in our briefing, but it also appears in our response to the Commission's, to the claim construction briefing, and that's at 122.75 to 76, where we talk about, or our co-defendants talk about the myriad of ways to measure, including the thermal definition. In the blue brief at 27, you argue that the patent supplies no objective boundary to distinguish some resilience from little resilience. Where in your petition for review did you raise that specific argument? I think those are the sections that we just spoke about earlier, that the indefiniteness determination is... Well, at 21.187, you discuss the concept of some resilience as compared to fibrous material. Why is that argument sufficient to apprise the ITC of your argument regarding some little resilience versus little resilience? Well, I think that the little resilience is perhaps a tweak on that argument. It's another fact that they should have considered. They certainly had good notice that this issue was before them. There was an indefiniteness challenge. Indefiniteness challenge was specific to the some resilience term. The some resilience term, when we made the argument that it was not reasonably bounded. The fact that there's also a disclaimer in the patent at one point is certainly before them, and certainly before this as well. There was a lot of waiver arguments that were raised. Were you counsel below? No. So I see that Aspen argues that Nano's counsel, quote, noted at trial that the ALJ pretty much copied the construction from the patent. And I'm quoting, mused that it, internal quote, makes you wonder why we respondents said it was indefinite, because the definition is pretty clear here, isn't it? How do you respond to that, since you didn't say that? Well, I certainly didn't say that. And I don't know why it is that the counsel for the other party had mused that. It certainly is inconsistent with the positions that we took before the ALJ and before the commission consistently. And it's certainly inconsistent with what we're saying here on appeal. It is an admission. Is it an admission? I said it is an admission, but I put a question mark after. I guess it admits that he was wondering. So we do have, before I turn quite to these merits arguments, I just wanted to finish up on the procedural issue that, at the very least, we certainly raised the substantial evidence, the substantial, the some resilience issue that that's indefinite. There was only one sentence from the ALJ, nothing from the commission at all. The ALJ provided one sentence that says that the patent discloses a lofty batting, is sufficiently resilient, if it has a 70% threshold, whatever that means. On the blue brief at 22, you argued the sole reason that the ALJ supplied to find the claim sufficiently definite was its reference to a lofty batting returning to 70% of its thickness during following compression. But at JA 402 to 404, the ALJ appears to have acknowledged that lofty batting is not limited to one specific example. I recognize its qualities of thermal conductivity, compressiveness, resilience. Why is it inaccurate? Why isn't it inaccurate to say that the ALJ relied on that sole reason where they also identified all of the uses of lofty batting in the specification? Well, the fact that the ALJ identified these new, these thermal properties just goes to show that the bulk and resilience definition itself is insufficient. Those two things are even further inconsistent. You have an adoption of bulk and resilience as the proper measure. And then at the same time, the ALJ is saying, well, there's another measure, there's thermal conductivities, but we're not going to adopt that. So that's an even further inconsistency. And the fact that there are other ways to measure doesn't say anything at all about what some resilience means. So those are the two separate... Are you challenging the claim construction here? I mean, you're not saying that the claim construction is incorrect. Instead, you're simply saying that the claim is indefinite, right? Well, the claim construction and indefiniteness are tightly intertwined. But you're definitely not challenging claim construction. You're saying the claim as construed is indefinite, right? Yes, we're saying the claim is indefinite and separately the claim as construed is indefinite because of two separate arguments. But you haven't said the claim construction is wrong. I mean, you kind of are because you're saying it's indefinite. But I just want to make sure I understand. Well, the ALJ did address these two things in her markment order, saying that the claim construction is not indefinite and this is the proper construction. So this is all kind of the same issue before the... How can you argue that this claim term, lofty batting, is indefinite given all of the disclosure and the detailed specification in 8, talking about the metrics that would be satisfied in order to have a lofty batting, talking about examples and materials that are in fact a lofty batting. I mean, there's one disclosed in column 12, one disclosed in column 13. There's prima loft, I think, in column 7 or 8. There's specific metrics on how far you should be able to squish it and how much it can come back. There's specific metrics on the thermal conductivity required. So how can it be that the patent owner has done so much to say what it is in the specification? Well, there are two specific issues here. So again, I try to make sure that these are two separate issues in the court's mind. The first one is it's unclear how to measure lofty to begin with. The bulk and resilience definition is one way to measure loftiness. The patent discloses other ways to measure loftiness, but the commission adopted only one. And having adopted it, but adopting that measure is antithetical to the prosecution history, to the intrinsic record. The patentee during prosecution rejected the bulk and resilience definition outright. He said, the examiner's reasons for allowance said, the bulk and resilience definition is what controls, that's how I understand it, that's how you overcome the prior art. And in response, the patentee filed an optional response and said specifically, lofty is defined, such that the batting is not limited solely by properties of bulk and some resilience. And so you have here an explicit rejection of the bulk and resilience definition in the prosecution history, and we can't just ignore that and say that we can adopt the bulk and resilience definition because the patentee specifically said that's not it. So statements made in the prosecution history make it so the specification's definition of the terms are indefinite? Well, the prosecution history is part of the intrinsic record, we certainly should be considering it. But if we look at the specification as well, that also renders the claims. Did you make this argument in your brief? Yeah, I think this is all in their briefs, pages 23 to 27, about the specification providing lofty batting, having multiple definitions. So specifically, if you look at the two definitions, they look like straight definitions. It just says, the thermal definition is A, batting is contains sufficiently few individual filaments that it doesn't change the thermal properties. It follows that up by saying generally there's a cross-sectional requirement as well that has to do with the thermal definition. And then it goes on and it says in the alternative, the resilience definition is, quote, another way, another way of determining if the batting is sufficiently lofty is to evaluate the compressibility and resilience. So we have a thermal definition. I'm sorry to interrupt you, but I'm looking at pages 23 through 27. I admit I just looked at them very quickly, but I don't see any reference to the prosecution history on those pages. Okay. So I'm wondering, where did you make this argument in your blue brief? So it's certainly in our claim construction and we made it to the board below. I'm not sure where exactly in the blue brief we identified the prosecution history. I'm happy to follow up on that. But it certainly was squarely before the ALJ. We had an entire section on that where we quoted the prosecution history specifically, and you can find that. You're going to do your rebuttal time if you keep going. No. I'm happy to reserve unless the court has more questions. Thank you. May I please the court? I'd like to address the issues that Allison raised just a few minutes ago. First, claim construction. Could you raise your voice just a little bit? Thank you. Sure. Claim construction is not at issue on this appeal. In fact, Allison agrees that the commission adopted the correct claim construction and the claims are not indefinite. Second, I think a bit of background as to what happened in the investigation is helpful. So at the request of the parties, there was no Markman hearing on the issues of indefiniteness or claim construction. Allison chose not to put forth any fact or expert witness testimony to support his arguments. In fact, if you look at Appendix 12752 to 753, that's the section, the pages where Allison made its indefinite argument in its initial claim construction brief. That section discusses the intrinsic evidence, the specification. It also then makes two arguments, starting at... This is highlighted in yellow. Unless the other counsel disagrees, there's nothing confidential here. It's discussing the intrinsic evidence and the specification. Then starting at Appendix 12751 near the bottom, it makes the first argument that the word bulk is purely subjective and is not reasonably bound. Then on the next page, at 12752 at the bottom, it makes the argument that the term resilience is not reasonably bound. And its arguments before the AOJ as to why resilience is indefinite consists of this one single paragraph. As you can see... So this is your waiver argument? It's a waiver argument. How do you respond on the merits? Assuming I don't agree that you waived, what's your response? The merits, Your Honor, characterize the specification. There's columns upon columns describing what a lofty batting is. It starts at line 1 of column 7 with the express definition of what a lofty batting is. And then it spends the rest of the specification, column 7 and 8, in multiple examples of what a batting, whether it's sufficiently lofty. It discusses properties... And what's not. Exactly. And it distinguishes... And I'm not sure if it was made below, but I'd like to know your thoughts on the argument that was made that the indefiniteness ruling is somehow inconsistent with the claim construction ruling because the claim construction doesn't read in most of those limitations, if you will, that are discussed in column 7 and 8. Right. So the reason I was going towards the background of what was actually presented before the ALJ kind of explains her reasoning is that the arguments that Allison made before her were very short. It was a very high level. I understand, but do you have a substantive response to that argument? It might be waived, but I do want to know what the Commission's view is on the merits. So the Commission does not find that the ALJ's indefiniteness analysis somehow contradicts its whole. And she starts out with saying in her Markman order that there's an express definition provided in the specification. And Allison's arguments were that express definition is indefinite. And she says, well, no, because the specification explains what bulk is. Bulk is air. And that's created by the intertwined fibers in the lofty batting. And then she also says, well, resilience is also not indefinite because the specification explains that resilience after some compression is the ability to spring back to at least 70% the thickness of the batting. And then she goes on to reject the Aspen and staff's proposed constructions trying to limit this express definition further with specific embodiments. And she said that there's no reason to limit this express definition because it's clear from the specification that there are multiple ways of describing this lofty batting with all these different properties. And there's no reason to incorporate a specific embodiment into the express definition. So I don't see how her indefiniteness analysis by calling out a specific example in the specification is somehow contradicting her claim construction. If I may address Allison's counsel's argument that Aspen and Commission's positions are somehow contradictory on how we approach the thermal properties disclosure, there's no contradiction. If you look at what the Commission's brief at page 33, and specifically footnote 13, and you compare with Aspen's discussion of thermal properties at pages 30 to 31, both the Commission and Aspen characterize the thermal properties as one of the goals of using a lofty batting to support the air gel. And this is specifically disclosed in the specification at column 7, lines 4 to 7, where the specification explains there's two purposes to using a lofty batting. First is to minimize the unsupported air gel so that you achieve this better mechanical properties. The second is to avoid substantial degradation to the thermal performance of the air gel. So the discussion of the thermal properties is in connection with one of these goals. And then the specification goes on to say, well, how do you accomplish this goal? It's namely to then look at how much fibers is included in this air gel composite. And you specifically, the specification then teaches you look at the cross-section of an air gel composite. You look at the cross-sectional area of the fibers. And that's how you can tell how much you can assess whether the thermal performance will be degraded. So there's no inconsistency between what Aspen and the Commission has been arguing as to how to characterize this thermal properties analysis. A loft and thermal properties are inextricably intertwined anyway because it deals with the amount of air that's in the space. Right, your honor. And that's entirely explained in the specification as to the wonderful characteristics of air gel as it has such low thermal conductivity. And the whole point of using this lofty batting is to try to not degrade that thermal characteristic of this pure air gel. Let me see what that says. And if I, let's see I have one minute left. If I can make two points about Ramamurthy. I know that wasn't raised, but they raised it for the first time in their reply brief. And if I could have a chance to respond to one of their arguments. So Allison points to Ramamurthy's references in column 12 at appendix 427, specifically calling out Ramamurthy's use of the words glass wool insulation and fiberglass insulation. And it argues that somehow the use of these words supports, inherits the argument that Ramamurthy discloses using insulation to support its air gel composite. But that's entirely not true. If you look at what's actually disclosed in column 12 of Ramamurthy, it's talking about one of his examples, which example two. It starts out at the top of column 12 with how do you make its example two composite. Well your point seemed to be that glass wool could be a lot of things. Right, and that's going towards their argument that glass wool somehow is intrinsically lofty. But this specific calling out of the insulation here, it was actually comparing the thermal properties of these then current fiberglass insulation with the thermal properties of the example two air gel composite that Ramamurthy made. You're into your co-counsel's time. I don't mind. I'll make this point very quickly. But what it's actually discussing is that, hey, the Ramamurthy's air gel composite example two actually has better thermal properties than the fiberglass insulation. So it's actually teaching away from using fiberglass insulation to support the air gel composite. If there are no more questions, I'll... Mr. Mukherjee. May it please the court, Prashanth Mukherjee representing Intervena Aspen. A couple of points. The evidence here shows that a skilled artisan would be able to understand the scope of lofty batting with reasonable certainty. This case we think is closest to Braintree Labs. That was a case where in medical context the term was copious diarrhea. The same argument was made how much is copious, etc. And the discord held, a person of skill in the art knows. It just means a lot. The same is true here with some resilience. There is an enormous amount of evidence that a person of skill in the art knows what some resilience is. And then the specification goes on to explain in even greater detail, all of which is perfectly consistent with how the term is used in the art. Dictionary defines loft in almost exactly the same words as the patent. An artisan can understand the dictionary. We submit they can understand the term. Allison's expert, Dr. Kinnead, he gave a definition that we think is fine. Same as every other tribunal or skilled artisan to have looked at this term. He says, he was asked what is resilience or some resilience. And he says, well some resilience means if you change the size, if you compress it a little bit, you can spring back to some extent. That's exactly what it means. It's not a complicated term. And the specification provides metrics that would fit within some resilience? Absolutely. It provides metrics. It provides examples. As you pointed out, insulet, quad cell, number of existing products at the time. Insulet actually has the word light loft. It's got loft in the name of the product itself. And all the examples and specifications are entirely consistent with Dr. Kinnead's understanding and the PTAB's understanding, everybody else's understanding of what some resilience means. Dr. Shearer, Allison's other expert at the PTAB, he says, column seven, these are examples encompassed under the quote, simple plain definition in column seven lines one through three. That is the commission's definition. This is at one, two, five, four, eight, paragraph 48. The ALJ did the same. The commission did the same. The PTAB did the same. As your honor pointed out, Nano's lawyer did the same. There's really no evidence of any confusion by anybody here. What is more, even if there is some gray area as to what some resilience means, it's not a practical problem. This case has addressed every aerogel blanket product by each one of the three biggest aerogel manufacturers in the world. And it's uncontested that every single one of them has an enormous amount of resilience. You can compress them to like 50% and they spring back to basically 100%. And on the other hand, prior art, there's a finding as no resilience. Any fine gradations of some resilience, it's just a theoretical construct. There's no practical significance in this case. Now, let me just turn very briefly to some of the waiver arguments. This prosecution history argument, that's doubly waived. It is not in Allison's brief, an appeal. I'm not even sure that part of the prosecution history is in the joint appendix. I haven't checked. It was not raised in the petition for review. It was raised at the Markman stage, but that's not sufficient in this context as Finnegan has held. You have to raise it again in the petition for review because the ITC redetermines claim construction. Was it raised in the Markman context for purposes of construing the claim or for purposes of indefiniteness or both? Honestly, your honor, I don't remember because this is the first time I've heard it for many years, but it's waived multiple times. Also, if you look at the actual language, that's not what it's actually saying. It's saying that there are guidelines. Look at the language. It's saying something along the lines of what the specification says are guidelines. Discussion and guidance, that's how the patentee characterizes the rest of claim seven. It's exactly how we characterize it. It's exactly how Allison's expert characterized it in the IPR. It's discussion and guidance explaining the clear definition, clear, simple definition at column seven lines one through three. Then the other waiver point, again, came up a little bit, is the argument that the construction, you don't just say, is the argument that it's not the construction with some resilience in it that is indefinite, but rather that you can't even reach that construction because of all these other things. That is thoroughly waived. It was not in the petition for review. Really, Allison's argument in his briefs is that they said the term lofty batting was indefinite, and that covers all indefiniteness arguments. That is not true. I'll cite your honors to HTC versus IPCOM, where it was exactly the same thing. There were two grounds for indefiniteness. One was the hardware. They said hardware was insufficient. The other said software was insufficient on appeal. What about cases like interactive gift, where we've held that, now this is in the context of claim construction, but we've held that on claim construction, you can't raise a new claim construction argument, but you can cite additional different intrinsic evidence in support of your claim construction. How do you respond to that on the waiver? I agree with that, and that is not what's happening here. This is a case where we have two different arguments. This is exactly HTC versus IPCOM. This is the case where the two arguments are, one, you can't construe it in the first place. Two, if you can construe it, some resilience is indefinite. Two is not waived. Some sub-arguments are, but two is not waived. But one is absolutely waived, that you can't construe it in the first place. That's a new argument. It's not new evidence. It's a brand new argument. The ITC's rules require that every argument, argument not theory, not claim, every argument must be presented in the petition for review. This argument is thoroughly waived. If there are no further questions, you want to? No, thank you, counsel. You have some time left. So I'd like to touch on the law of waiver and then on the substantial, the some resilience issue, which everybody agrees is not waived. I think we're going to find something in the record for Judge Stoll as well, I think. On the law of waiver, even if the court believes that the precise argument wasn't raised below, the law of waiver applies to issues, not to specific arguments. That's Ye versus City of Escondido, the Supreme Court case on that. It says that once a federal claim is properly presented, a party can make any argument in support of that claim. Parties are not limited to the precise arguments they made below. Here, we certainly raise the indefiniteness challenge. Below, we raise it here in two ways. Those are not separate claims. Even if the court believes those are separate arguments, those are simply separate arguments in support of a single claim, so they're not waived. Is it your position that if you argued that a claim was indefinite, you could point out one word as being indefinite and then on appeal point out a different word? No, it's a specific claim. So claim construction is an excellent example. You can't come up to the court here and say, oh, I have a new claim construction for a new term. That would be a different claim. But in this case, we're talking about the same word in the same place, the same indefiniteness issue. If we have two different arguments in support of the same claim, that's not waived according to well-established Supreme Court principles. And before I sit back down, I just wanted to say some things about the sum resilience issue, which everybody says is not waived. And I know that when you read through the briefing, it seems like, man, they really have all of these arguments. It seems like it's kind of overwhelming. But if you look at each one of them, not a single place in the specification, not a single person, not a single briefing ever said what sum resilience means. They pointed to our own expert, and they asked him what resilience means. And he says, quote, sort of the ability to spring back. And I said, okay, what does sum resilience mean? He says, well, compress it some, and it springs back. That's not a definition. That's not an admission of anything. The ALJ, they pointed to the ALJ, but the ALJ never applied sum resilience. It said, quote, specifically, regardless of how much actual resilience is required, we have an infringement here, is what they said. Now, that does not apply a definition of sum resilience. Same thing with the commission. The commission looked at Rahman Murthy's lofty batting. They said that a mat is disclaimed, that loose fibers are not batting, rovers are not cheats. Nothing about what sum resilience means. There's nowhere could they point to anybody who says what sum resilience means. Look at this written description as well. And they say you could look, because it has examples of thinsulate, and we have some requirements, exactly, minimizing volume of unsupported aerogel and avoiding substantial degradation of thermal performance. Nothing to do with sum resilience at all. Do you have a site to your briefs where the prosecution history was raised? Only because if you don't give a site, then I'll just understand that it's not mentioned specifically in the appellate briefs. Sorry. Well, it's in the claim construction here, but the appellate briefs, I would just point to that section that makes the argument on how to measure loftiness.